STATE OF NORTH CAROLINA v. JOHN SILVER MURDOCK

No. 152A88

(Filed 9 November 1989)

1. **Jury § 5 (NCI3d)— excusal of petit jurors—statutory procedure not followed—no error**

The trial court did not err in a prosecution for murder, rape, and first degree sexual offense by denying defendant's motion challenging the procedure used in Rowan County to excuse or defer potential jurors from the petit jury panel where it was clear that the district court judge failed to strictly comply with the statute governing the excusal of jurors, but those irregularities did not constitute error. N.C.G.S. § 9-6.

**Am Jur 2d, Jury §§ 120, 121, 123.**

2. **Criminal Law § 1138 (NCI4th)— sexual offense—aggravating factor—crime committed to avoid or prevent arrest**

The trial judge did not err when sentencing defendant for second degree sexual offense by finding in aggravation that the sexual offense was committed for the purpose of avoiding or preventing a lawful arrest for the murder of the victim where the trial court found that defendant left another residence nearby; went to his grandmother's residence; used substantial force against her which resulted in her death; and committed the sexual offense in order to cover up his wrongdoing and prevent his detection by planting the suspicion that someone other than he had entered the residence and committed the crimes. The court expressly overruled *State v. Thompson*, 66 N.C. App. 679, and held that the language in N.C.G.S. § 15A-1340.4(a)(1)(b), like N.C.G.S. § 15A-2000(e)(4), is intended to include situations where defendant's motivation in committing the second offense was to avoid subsequent detection

STATE v. MURDOCK

[325 N.C. 522 (1989)]

and apprehension for the underlying crime and was not to be limited solely to situations where defendant committed the second offense to avoid an immediate arrest or to escape from custody.

**Am Jur 2d, Criminal Law § 527; Rape § 114.**

APPEAL by defendant from judgments sentencing defendant to life imprisonment for his conviction of first-degree murder and a consecutive term of forty years for his conviction of second-degree sexual offense, imposed by *DeRamus, J.,* at the 9 November 1988 session of Superior Court, ROWAN County. Heard in the Supreme Court 11 October 1989.

*Lacy H. Thornburg, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia DeVine, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

We find the defendant's assignments of error to be without merit and conclude that his trial and sentencing were free of prejudicial error.

Our decision does not require an extensive recital of the facts. In brief, the evidence showed that on 14 September 1986 the body of Janie Brown Murdock, aged ninety-six, was discovered in the bedroom of her small apartment. Her face, neck and arms were battered and covered with blood and she was undressed from the waist down. An autopsy performed by Dr. Cheryl Thorne, assistant medical examiner for the state, revealed that the bruises and other injuries to the victim's head were insufficient, without more, to have caused unconsciousness; that the pattern and location of lacerations on the arms were consistent with "defense wounds"; that the scrapes and abrasions around the vaginal area were consistent with "an attempt to place a blunt object into the vagina"; and that the presence of blood in the lungs and internal hemorrhaging in the neck and larynx indicated probable strangulation.

Further evidence showed that defendant, John Silver Murdock, aged thirty, was the grandson of the victim and had visited her on the evening of 13 September 1986. Based on information obtained from neighbors and family members, the police asked defend-

ant to come to the police station for questioning. After several patently false explanations, defendant confessed the following: that his grandmother tripped while getting up to turn down the volume on the television; that she did not respond to his ministrations and did not appear to have a pulse; that she was bleeding from her mouth and nose; that he was afraid that family members would suspect that he had killed her; that he dragged her to the bedroom and placed her on the bed; that he made it look like a sexual assault to help convince family and friends that he was not responsible; that he threw his t-shirt away because it was covered in blood; and, that he had not sexually or physically assaulted his grandmother.

Defendant was charged with first-degree murder, first-degree rape and first-degree sexual offense. The jury found him guilty of first-degree murder and second-degree sexual offense and not guilty of rape. At the conclusion of the penalty phase of the trial, the jury unanimously recommended that defendant be sentenced to life imprisonment on the murder conviction.

The recommendation of the life sentence was based on the fact that the jury found that the mitigating circumstances outweighed the aggravating circumstances. The jury found in aggravation that the murder was especially heinous, atrocious or cruel, N.C.G.S. § 15A-2000(e)(9), but did not find that the murder was committed for the purpose of avoiding or preventing a lawful arrest, N.C.G.S. § 15A-2000(e)(4). The jury found as mitigating circumstances that the murder was committed while the defendant was under the influence of a mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); that the capacity of the defendant to appreciate the criminality of his conduct was impaired, N.C.G.S. § 15A-2000(f)(6); that the capacity of the defendant to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6); and that prior to arrest the defendant voluntarily acknowledged wrongdoing in connection with the events surrounding the death of Janie Brown Murdock to a law enforcement officer, N.C.G.S. § 15A-2000(f)(9).

Accordingly, the judge sentenced defendant to life imprisonment on the first-degree murder conviction and imposed a consecutive forty year sentence on the second-degree sex offense conviction. Defendant's motion to bypass the Court of Appeals on the sex offense conviction was allowed on 5 December 1988.

## I.

[1]  By his first assignment of error, defendant contends that the trial court erred in denying his motion challenging the procedure utilized in Rowan County to excuse or defer potential jurors from the petit jury panel. We find no merit in this contention.

On 9 November 1987, defendant filed a written motion challenging the jury panel for that week's criminal session of superior court for Rowan County. In his motion, defendant alleged that prospective jurors were excluded or deferred from the jury panel by district court Judge Robert M. Davis for reasons other than compelling personal hardship of the prospective juror or because the service of such prospective juror would be contrary to the public welfare, health or safety in violation of N.C.G.S. § 9-6.

The pertinent statute states, in part:

(a) The General Assembly hereby declares the public policy of this State to be that jury service is the solemn obligation of all qualified citizens, and that excuses from the discharge of this responsibility *should* be granted only for *reasons of compelling personal hardship or because requiring service would be contrary to the public welfare, health, or safety.* (b) Pursuant to the foregoing policy, each chief district court judge shall promulgate procedures whereby he . . . shall receive, hear and pass on applications for excuses from jury duty. . . . (c) A prospective juror excused by a judge in the exercise of the *discretion conferred by subsection (b)* may be required . . . to serve . . . in a subsequent session. (emphasis added).

N.C.G.S. § 9-6 (Cum. Supp. 1988).

Extensive testimony was introduced by defendant on voir dire concerning the procedures actually followed by the district court judge in excusing potential jurors. It was alleged that Judge Davis granted all requests regardless of the reason, authorized his wife to sign his name to the requests in certain situations, failed to have an independent recollection about what transpired regarding any of the excuses signed by his wife, and denied being instructed not to have someone else sign the juror excuses or deferrals for him.

After considering the testimony, superior court Judge DeRamus entered his findings and conclusions as follows: "that the defendant has failed to show any corrupt intent or systematic discrimination

in the compilation and composition of the jurors on the panel"; "that no preferences were made to any particular group of jurors"; and that "the Court does not find them [excuses or deferrals] to rise to a level that would tend to show some corruption or taint of any significant proportion on the jurors who are actually present and here ready to serve and there is nothing to indicate that the jury that is here is not a good cross representation of the community or is in any way—the jury that is here as a panel is anything other than a representative jury in Rowan County."

Thus, in denying defendant's motion, Judge DeRamus correctly interpreted the proper standard set forth in *State v. Vaughn*, 296 N.C. 167, 250 S.E.2d 210 (1978), *cert. denied*, 441 U.S. 935, 60 L. Ed. 2d 665 (1979). There, defendant moved to quash the indictment on grounds that qualified jurors were disqualified from serving on the grand jury. The trial court denied the motion on the basis that no showing had been made that qualified persons were being categorically disqualified and this Court agreed. Even if the proper showing had been made, this "would not require a dismissal of the indictment absent a showing of corrupt intent or systematic discrimination in the compilation of the list." *State v. Vaughn*, 296 N.C. at 175, 250 S.E.2d at 215.

While *Vaughn* specifically dealt with the selection process of the grand jury, this holding has been found to apply to the procedures utilized in selecting petit jury panels as well. *State v. Johnson*, 317 N.C. 343, 346 S.E.2d 596 (1986); *State v. Massey*, 316 N.C. 558, 342 S.E.2d 811 (1986).

In the instant case, while it is clear that the district court judge failed to strictly comply with the statute governing the excusal of jurors, we do not agree that these alleged statutory irregularities constitute error. "This Court has held that deviations from the statutory norm do not automatically constitute reversible error absent an express statutory provision to the contrary." *State v. Johnson*, 317 N.C. at 379, 346 S.E.2d at 616. Furthermore, from *Vaughn* it follows that even if defendant had made a showing of a statutory violation, he is not entitled to a new trial because the evidence tends to negate any corrupt intent, discrimination or irregularities which affected the actions of the jurors actually drawn and summoned. "[O]ur reports are replete with decisions sustaining the validity of indictments against the charge that the statutory procedures were violated in the compilation of the jury

list, the ground of the decision in each case being that the statute was directory and a departure from it does not render the grand jury unlawful, and its actions void, in the absence of a showing of corrupt intent in the compilation of the list or of the presence upon the grand jury of a member not qualified to serve." *State v. Yoes and Hale v. State*, 271 N.C. 616, 638-39, 157 S.E.2d 386, 404 (1967). Defendant's motion was properly denied.

Although the actions of the trial judge did not result in error, it is not inappropriate to suggest that district court judges excuse jurors only in keeping with the language and the spirit of the statute. N.C.G.S. § 9-6 sets forth the proper procedure for excusing or deferring jurors from the jury list.

## II.

[2] Defendant next contends that in the second-degree sexual offense conviction the trial court erred in finding as an aggravating factor that the sexual offense was committed for the purpose of avoiding or preventing a lawful arrest for the murder of Janie Brown Murdock pursuant to N.C.G.S. § 15A-1340.4(a)(1)(b). We disagree.

N.C.G.S. § 15A-1340.4(a)(1) provides, in part, that if "the offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody," then that offense may be considered as an aggravating factor. Relying on *State v. Thompson*, 66 N.C. App. 679, 312 S.E.2d 212 (1984), defendant asserts that the statutory language "avoiding or preventing a lawful arrest" was never meant to describe a situation in which a defendant may have sought to avoid detection or otherwise "cover up" or "distract from" his involvement in one crime by perpetrating another.

In *Thompson*, the Court of Appeals considered a noncapital case where defendant was convicted of robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. In sentencing on the armed robbery conviction, the trial court applied N.C.G.S. § 15A-1340.4(a)(1)(b) and found that the assault was an aggravating factor because it "was committed after the armed robbery had been completed" and "was committed in an effort to escape or to prevent lawful arrest." The Court of Appeals reversed the trial court, noting:

The record does not disclose that defendant was threatened with arrest at the time he committed the offense. Nor do

we believe he can be said to have committed the offense in an effort to escape, since he was not restrained in any way at the time. Thus there was no evidence that would support the court's finding in this regard.

*Id.* at 682, 312 S.E.2d at 214. The Court of Appeals by its narrow interpretation would appear to limit this factor *only* to cases where defendant is attempting to escape from custody or to avoid a legal arrest by a police officer or other apprehending official.

In reaching this conclusion, however, the Court of Appeals failed to consider this Court's numerous holdings regarding the parallel aggravating circumstance for capital cases as enumerated in N.C.G.S. § 15A-2000(e)(4). *See State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Feb. 21, 1989) (No. 88-6684); *State v. Green*, 321 N.C. 594, 365 S.E.2d 587 (1988), *cert. denied*, --- U.S. ---, 102 L. Ed. 2d 235 (1988); *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983); *State v. Williams*, 304 N.C. 394, 284 S.E.2d 437 (1981), *cert. denied*, 456 U.S. 932, 72 L. Ed. 2d 450 (1982); *State v. Goodman*, 298 N.C. 1, 257 S.E.2d 569 (1979). These cases unmistakably indicate that when dealing with capital crimes, this Court has construed the provisions contained in N.C.G.S. § 15A-2000(e)(4) to apply where there is evidence that "one of the purposes behind the offense was the desire by the defendant to avoid detection and apprehension for some underlying crime as opposed to submitting it only if the killing took place 'during' an escape from custody or lawful arrest situation." *State v. Oliver*, 309 N.C. at 350, 307 S.E.2d at 320. There is no compelling reason why the felony aggravating factor set forth in N.C.G.S. § 15A-1340.4(a)(1)(b) should be more narrowly construed than its capital crime counterpart. Therefore, we expressly overrule *Thompson*. We hold that the language in N.C.G.S. § 15A-1340.4(a)(1)(b), like N.C.G.S. § 15A-2000(e)(4), is intended to include situations where defendant's motivation in committing the second offense was to avoid *subsequent* detection and apprehension for the underlying crime. It is not to be limited solely to situations where defendant committed the second offense in an effort to avoid an *immediate* arrest or to escape from custody.

In the present case, the trial court found that defendant left another residence nearby, went to his grandmother's residence and thereafter used substantial force against her which resulted in her death. The Court further found that defendant committed the

sexual offense in order to cover up his wrongdoing and prevent his detection by planting the suspicion that someone other than he had entered the residence and committed the crimes. Presumably, defendant was operating under the notion, however misguided, that witnesses seeing him enter his grandmother's residence might suspect him of robbery but would not consider him capable of sexually assaulting his own grandmother.

The trial court correctly concluded that one of defendant's purposes behind the sexual assault of his grandmother was the desire to avoid detection and apprehension for the prior assault upon her which resulted in her death. Therefore, under our interpretation of N.C.G.S. § 15A-1340.4(a)(1)(b), defendant's actions were properly submitted to the jury as an aggravating factor in his sentencing hearing.

Defendant received a fair trial free of prejudicial error.

No error.