STATE OF NORTH CAROLINA v. KJELLYN ORLANDO LEARY

No. 52A95

(Filed 31 July 1996)

**1. Jury § 235 (NCI4th)— first-degree murder—death qualifying jury**

The trial court did not err in a first-degree murder prosecution by denying defendant's motion to seat jurors without regard to death-qualification and by denying his request for a separate sentencing jury. The North Carolina Supreme Court has previously ruled against defendant's position and defendant presents no compelling reason for the Court to reexamine this issue.

**Am Jur 2d, Jury §§ 264-267, 279, 291, 334, 338.**

**2. Evidence and Witnesses § 1235 (NCI4th)— confession— standard for determining custody—objective rather than subjective**

The North Carolina Supreme Court declined to adopt a subjective rather than objective state of mind test for determining whether a defendant was in custody when a statement was given.

**Am Jur 2d, Evidence §§ 721, 722, 749, 750.**

**3. Evidence and Witnesses § 1235 (NCI4th)— confession— not custodial**

The trial court did not err in a prosecution for murder, robbery, and kidnapping by denying defendant's motion to suppress his statements to a law enforcement officer where defendant asserted that the first statement occurred during an in-custody interrogation without *Miranda* warnings and that the second statement was tainted by the first. The evidence tended to show that defendant was twenty-two years old and had prior experience with the criminal justice system; the first interview with defendant began at approximately 10:25 a.m.; the officer testified that defendant acted normal, "knew everything that was going on," appeared calm, and exhibited no signs of alcohol or drug use; defendant was told that he was not under arrest and that he was free to leave and was not subjected to physical threats or shows of violence; defendant testified that he was not mistreated in any way; the initial interview concluded at approximately 12:47 p.m.; defendant was not given his *Miranda* warnings before or during this first interview; the second conversation with defendant began at approximately 11:15 p.m. and concluded at approximately 11:20 p.m.; the officer testified that during this interview defendant appeared "much as he was before," "knew what was going on," and communicated effectively; the officer testified that defendant was not threatened, coerced, or intimidated and that at the beginning of this conversation he gave defendant his *Miranda* warnings; defendant signed the waiver of rights form; and the judge specifically found that defendant was not in custody during the first interview and that he chose "knowingly and voluntarily to make a statement to the police." As to the second interview, Judge Bowen found that defendant "knowingly and voluntarily chose to waive [his] rights and make a statement to and provide assistance to the police."

**Am Jur 2d, Evidence §§ 721, 722, 749, 750.**

**4. Evidence and Witnesses § 1230 (NCI4th)— constitutional rights—warnings—North Carolina Constitution**

The North Carolina Constitution does not require all law enforcement officers to warn all criminal suspects, regardless of whether they are in custody, that they are free to walk away immediately, that they have a right to an attorney before answering any question, and that anything they say, orally or in writing, casually or formally, will be used against them in a court of law.

**Am Jur 2d, Evidence §§ 749, 750.**

**5. Jury § 32 (NCI4th)— first-degree murder—jury selection— potential jurors excused before case called—outside presence of defendant**

The trial court did not err in a prosecution for murder, kidnapping, and robbery by denying defendant's motion to dismiss the jury venire after the district court judge excused jurors outside the presence of defendant and his counsel where the trial court found and concluded that the chief district court judge excused or deferred some jurors prior to the case being called for trial, but no record exists of the reasons for such action; defendant failed to offer any evidence of corrupt intent or systematic discrimination in the compilation and composition of the jury venire; no evidence suggests that the jury was not a good cross representation of Wake County; and excusing or deferring the prospective jurors was not a critical phase of the trial and occurred some days before the case was called for trial.

**Am Jur 2d, Jury §§ 183-185.**

**Validity of jury selection as affected by accused's absence from conducting of procedures for selection and impaneling of final jury panel for specific cases. 33 ALR4th 429.**

**6. Criminal Law § 1298 (NCI4th)— first-degree murder— motion that defendant not eligible for death penalty— denied**

The trial court did not err in a prosecution for murder, kidnapping, and robbery by refusing to grant defendant's motion to declare that he was not eligible for the death penalty. The State's evidence supported the inference that defendant was a major participant, that defendant acted with reckless indifference to

human life while participating in these events, and that these events resulted in two deaths; thus the culpability requirement set out in *Tison Arizona*, 481 U.S. 137, is satisfied. Additionally, the State's evidence supported the finding of aggravating circumstances.

**Am Jur 2d, Criminal Law §§ 609 et seq.; Homicide §§ 552-556.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

**7. Homicide § 244 (NCI4th)— first-degree murder—premeditation and deliberation—sufficiency of evidence**

The trial court did not err by overruling defendant's objection to the submission to the jury of the charge of first-degree murder as to one victim on the theory of premeditation and deliberation where the State's evidence tended to show that defendant knew the victim had been kidnapped and was in the trunk of the car he was driving; defendant drove to the spot where the killing occurred and waited in the car while an accomplice took the victim out of the trunk, walked the victim into the woods, and then came back alone; and defendant then drove away with the accomplice.

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two consecutive life sentences entered by Farmer, J., at the 18 April 1994 Criminal Session of Superior Court, Wake County, upon jury verdicts of guilty of two counts of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed 28 August 1995. Heard in the Supreme Court 14 March 1996.

*Michael F. Easley, Attorney General, by William Dennis Worley, Associate Attorney General, and Joan H. Erwin, Assistant Attorney General, for the State.*

*Thomas H. Eagen for defendant-appellant.*

PARKER, Justice.

Defendant was tried capitally and found guilty of two counts of first-degree murder for the deaths of Emmanuel Oguayo and Donald Ray Bryant. Defendant was also found guilty of two counts of robbery with a firearm as to Emmanuel Oguayo and Lindanette Walker and guilty of first-degree kidnapping as to Donald Bryant. Following a capital sentencing proceeding, the jury recommended life sentences for each of the murder convictions. Judge Robert L. Farmer arrested judgment on the first-degree kidnapping, treated the kidnapping conviction as second-degree kidnapping, consolidated the Bryant kidnapping and murder convictions for judgment, and sentenced defendant to life imprisonment for the kidnapping and death of Bryant. Judge Farmer then consolidated for judgment the two convictions of robbery with a firearm with the first-degree murder conviction of Oguayo and sentenced defendant to a consecutive sentence of life imprisonment.

The evidence at trial tended to show that on the evening of 12 February 1993, Kjellyn Leary (defendant), Jerome Braxton, Christopher Braxton, and Robin Moore set out in a car driven by "Jennifer," with the intent to rob someone at Saint Augustine's College in Raleigh, North Carolina. Moore brought along his shotgun. Jennifer dropped the group off across the street from the college. Donald Bryant, one of the victims, pulled up in his car beside Jerome Braxton and Moore, got out, and asked Jerome Braxton if he had any

cocaine. Jerome responded that he did not have any cocaine, and Bryant started walking back to his car. Moore took out his shotgun and forced Bryant into the backseat of the car; all the men then left the area in Bryant's car. Jerome Braxton went through Bryant's pockets and found some money and marijuana. The group eventually stopped the car, and Moore forced Bryant into the trunk. At this point Christopher Braxton became scared and left the group.

The remaining three men, defendant, Jerome Braxton, and Robin Moore, went to the Fast Fare convenience store on East Millbrook Road. Defendant and Braxton went into the store, and Moore remained in the car. Braxton told the clerk, Emmanuel Oguayo, to get behind the counter. Braxton then walked toward Lindanette Walker, a patron of the store, and ordered her to get on the floor. Braxton took Walker's jacket, watch, wallet, and keys. Defendant went behind the front counter with the clerk and got the money out of the cash register. Oguayo began fighting with defendant, and defendant called out to Braxton. Oguayo ran to the store window and began banging on the window and screaming for help. Braxton then shot and killed Oguayo.

Braxton and defendant ran back to the car, and Moore drove away with the men. Moore drove to his home and left the group. Defendant then drove the car to the woods. Braxton took Bryant out of the trunk and into the woods in North Raleigh where he shot Bryant. Braxton returned to the car, and defendant drove away with Braxton.

[1] Defendant argues in his first two assignments of error that the trial court erred in denying his motion to seat jurors without regard to death-qualification and by denying his request for a separate sentencing jury. Defendant argues that the process of death-qualification results in a jury that is biased in favor of the prosecution and prone to find defendant guilty. Defendant contends that the trial court's actions denied him his state and federal constitutional rights to a fair trial, due process, and equal protection of the law. As defendant concedes, however, this Court has previously ruled against defendant's position on this issue. *See, e.g., State v. Conner*, 335 N.C. 618, 440 S.E.2d 826 (1994); *State v. Smith*, 320 N.C. 404, 358 S.E.2d 329 (1987); *State v. Wingard*, 317 N.C. 590, 346 S.E.2d 638 (1986); *State v. Barts*, 316 N.C. 666, 343 S.E.2d 828 (1986); *State v. Avery*, 299 N.C. 126, 261 S.E.2d 803 (1980). Defendant has presented no compelling reason

why this Court should reexamine this issue, and these assignments of error are overruled.

[2] Defendant next contends the trial court erred by denying his motion to suppress statements made to a law enforcement officer and his motion to exclude involuntary admissions and confessions. Defendant made two recorded statements to Investigator John Howard prior to trial. Defendant asserts that the first statement occurred during an in-custody interrogation without his having been given *Miranda* warnings and was made involuntarily. Defendant contends that the second statement, given later the same day, was tainted by the first *Miranda* violation and was also involuntary.

We first note that defendant concedes that, under the current status of the law, there was sufficient evidence to support the trial court's finding that defendant was not in custody when he made the first statement. The test to determine whether a suspect is in custody is "an objective test of whether a reasonable person in the suspect's position would believe that he had been taken into custody or otherwise deprived of his freedom of action in any significant way or, to the contrary, would believe that he was free to go at will." *State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 581 (1982). Defendant argues, however, that a subjective state of mind should control and urges this Court to adopt such a standard. We decline to do so.

[3] While defendant concedes there is no error as to the custodial issue under the current status of the law, he argues that the first statement was made involuntarily and should thus have been excluded. In determining whether a defendant's confession is voluntarily made, this Court considers the totality of the circumstances. *State v. Hardy*, 339 N.C. 207, 451 S.E.2d 600 (1994). In *Hardy* this Court set out factors to be considered in this inquiry:

> whether defendant was in custody, whether he was deceived, whether his Miranda rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*Id.* at 222, 451 S.E.2d at 608.

In the present case the evidence pertaining to the circumstances surrounding defendant's first statement tends to show the following.

STATE v. LEARY

[344 N.C. 109 (1996)]

Defendant was twenty-two years old at the time he made the statement and had prior experience with the criminal justice system. The first interview with defendant began at approximately 10:25 a.m. Investigator Howard testified that defendant acted normal, "knew everything that was going on," appeared calm, and exhibited no signs of alcohol or drug use. Defendant was told that he was not under arrest and that he was free to leave. Defendant was not subjected to physical threats or shows of violence. Defendant testified that he was not mistreated in any way. This initial interview concluded at approximately 12:47 p.m. Defendant was not given his *Miranda* warnings before or during this first interview.

Howard testified that during the first interview, he indicated to defendant that he had spoken with Robin Moore and that Moore had told him what happened. In fact, Howard had not spoken with Moore prior to the initial interview with defendant. Howard testified that he was using an interviewing "technique" that involved playing one defendant against another, "even though one may not have told you something."

Howard testified that his second conversation with defendant began at approximately 11:15 p.m. This interview concluded at approximately 11:20 p.m. Howard testified that during this interview, defendant appeared "much as he was before," "knew what was going on," and communicated effectively. Howard testified that defendant was not threatened, coerced, or intimidated. Howard also testified that at the beginning of this conversation, he gave defendant his *Miranda* warnings, and defendant signed the waiver of rights form.

Judge Wiley F. Bowen, the trial judge who heard and denied defendant's motions, made findings of fact essentially in accord with the evidence offered during the *voir dire.* Judge Bowen specifically found that defendant was not in custody during the first interview and that he chose "knowingly and voluntarily to make a statement to the police." As to the second interview, Judge Bowen found that defendant "knowingly and voluntarily chose to waive [his] rights and make a statement to and provide assistance to the police." Judge Bowen concluded that defendant's constitutional rights were not violated by "his interview, arrest, detention and subsequent interview"; that defendant was neither threatened nor offered rewards or inducements for his statements; and that under the totality of the circumstances, both statements made by defendant were made "freely, voluntarily and understandingly."

The trial court's findings of fact are binding if supported by competent evidence in the record. *State v. Rook*, 304 N.C. 201, 212, 283 S.E.2d 732, 740 (1981), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982). The conclusion of voluntariness, however, is a legal question which is fully reviewable. *Davis*, 305 N.C. at 419-20, 290 S.E.2d at 586. Applying the foregoing principles to the instant case, we hold that the trial court did not err in concluding that defendant's statements were voluntary.

[4] Defendant also requests that this Court rule that the North Carolina Constitution goes beyond the United States Constitution and requires all law enforcement officers to warn all criminal suspects, regardless of whether they are in custody, "that they are free to walk away immediately, that they have a right to an attorney before answering any question, and that anything they say, orally or in writing, casually or formally, will be used against them in a court of law." We decline to depart from the well-established precedent in this area of constitutional law. This assignment of error is overruled.

[5] By his next assignment of error, defendant contends that the trial court committed error by denying his motion to dismiss the jury venire after the district court judge excused jurors outside the presence of defendant and his counsel. Both parties agree that these jurors were excused prior to defendant's case being called for trial. Defendant concedes that this Court has previously ruled that it was not error for the court to excuse prospective jurors prior to the commencement of a defendant's trial. *See, e.g., State v. McCarver*, 341 N.C. 364, 462 S.E.2d 25 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 482 (1996); *State v. Cole*, 331 N.C. 272, 415 S.E.2d 716 (1992); *State v. Murdock*, 325 N.C. 522, 385 S.E.2d 325 (1989). Defendant argues, however, that these cases were wrongly decided in that they stand for the proposition that "a judge may excuse jurors for any noncorrupt reason or no reason at all" prior to the commencement of a defendant's trial. Defendant argues that our previous cases unfairly shift the burden of proving corrupt intent and systematic discrimination to the defendant when no records are kept of the excusal process, the process occurs before defendant's trial begins, and defense counsel is not present to oversee the procedure.

North Carolina General Statute section 9-6 provides, in part:

(a) The General Assembly hereby declares the public policy of this State to be that jury service is the solemn obligation of all qualified citizens, and that excuses from the discharge of this

responsibility should be granted only for reasons of compelling personal hardship or because requiring service would be contrary to the public welfare, health, or safety.

(b) Pursuant to the foregoing policy, each chief district court judge shall promulgate procedures whereby he . . . shall receive, hear, and pass on applications for excuses from jury duty. . . .

(c) A prospective juror excused by a judge in the exercise of the discretion conferred by subsection (b) may be required by the judge to serve as a juror in a subsequent session of court.

N.C.G.S. § 9-6 (Supp. 1995).

After hearing defendant's motion to dismiss the jury venire, Judge Farmer entered the following findings and conclusions: The chief district court judge excused or deferred some jurors prior to this case being called for trial, but no record exists as to the reasons for such action; "defendant failed to offer any evidence of corrupt intent or systematic discrimination in the compilation and composition of the jury venire"; no evidence suggests that the jury was not a "good cross representation of Wake County"; and "excusing or deferring the prospective jurors was not a critical phase of the trial and occurred some days before the case was called for trial." Judge Farmer then denied defendant's motion.

. Section 9-6 places the process of juror excusals within the discretion of the district court judge. In *State v. Murdock* we stated that a defendant is not entitled to a new trial for improper jury excusals in the absence of evidence of corrupt intent, discrimination, or irregularities which affected the actions of the jurors actually drawn and summoned. *Murdock*, 325 N.C. at 526, 385 S.E.2d at 327. Defendant presents us with no persuasive authority to depart from our previous holdings, which place the burden on the defendant to come forward with evidence that the district court judge abused his discretion in the excusal process. A review of the record reveals that defendant presented no evidence that the district court judge in this case acted with corrupt intent or systematic discrimination. Defendant having failed to meet his burden, this assignment of error is overruled.

[6] In defendant's next assignment of error, he contends that the trial court erred by refusing to grant his motion at the close of the State's case to declare that the defendant was not eligible for the death penalty. Defendant argues that the State's evidence was not sufficient to support a finding that defendant was a major participant who

STATE v. LEARY

[344 N.C. 109 (1996)]

demonstrated a reckless disregard for human life in the Fast Fare robberies and murder of Oguayo or in the kidnapping and murder of Bryant. Defendant contends that he would not have presented certain evidence during the guilt phase of his trial if this motion had been granted. Specifically, defendant contends that he would not have introduced the statements made by Jerome Braxton to police officers, which corroborated the State's case, "but for the need to ensure that the jury fully realized that [defendant] shot no one and to contrast him against [Braxton]." Assuming *arguendo* that this assignment of error is a proper issue for review, defendant's claim is meritless.

Defendant argues that *Tison v. Arizona*, 481 U.S. 137, 95 L. Ed. 2d 127 (1987), precludes his eligibility for the death penalty. This Court has interpreted *Tison* as holding that "the death penalty could not be imposed upon a criminal defendant who did not actually kill, intend to kill, or participate in a major way in criminal conduct which resulted in death while acting with reckless indifference to human life." *State v. Howell*, 335 N.C. 457, 466, 439 S.E.2d 116, 121 (1994).

In the instant case the State's evidence supported the inference that defendant was a major participant in the events that occurred in the late hours of 12 February and early hours of 13 February, that defendant acted with reckless indifference to human life while participating in these events, and that these events resulted in two deaths. Thus, the culpability requirement set out in *Tison* for imposition of the death penalty is satisfied in this case.

Additionally, the State's evidence supported the finding of aggravating circumstances. When determining the sufficiency of the evidence to support the existence of an aggravating circumstance, the trial court must consider the evidence in the light most favorable to the State. *State v. Quick*, 329 N.C. 1, 31, 405 S.E.2d 179, 197 (1991). The State is entitled to every reasonable inference to be drawn from the evidence, contradictions and discrepancies are for the jury to resolve, and all evidence admitted that is favorable to the State is to be considered. *State v. Gibbs*, 335 N.C. 1, 61, 436 S.E.2d 321, 356 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 881 (1994). Applying these principles to the instant case, the evidence is sufficient to support the aggravating circumstances that the killing of Bryant occurred during the course of a kidnapping, N.C.G.S. § 15A-2000(e)(5) (Supp. 1995), and that it occurred as part of a course of conduct involving other violent crimes, N.C.G.S. § 15A-2000(e)(11). Likewise, the evidence is sufficient to support the aggravating circumstances that the

killing of Oguayo occurred during the course of a robbery, N.C.G.S. § 15A-2000(e)(5), and that it occurred as part of a course of conduct involving other violent crimes, N.C.G.S. § 15A-2000(e)(11). Thus, the trial court did not err in denying defendant's motion at the close of the State's case to declare that defendant was not eligible for the death penalty.

Defendant asserts in his next assignment of error that the trial court erred by failing to grant his motion to dismiss all charges for insufficiency of the evidence at the close of all evidence. However, defendant concedes in his brief that the evidence in this case was sufficient to justify submitting the charges to the jury. This assignment of error is overruled.

[7] Defendant also contends, in a separate assignment of error, that the trial court erred in overruling his objection to the submission to the jury of the charge of first-degree murder as to Bryant on the theory of premeditation and deliberation.

On a defendant's motion for dismissal on the ground of insufficiency of the evidence, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). To be "substantial," evidence must be "existing and real, not just seeming or imaginary." *Id.* at 66, 296 S.E.2d at 652. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *Id.*

Defendant contends that there was insufficient evidence to support a conviction of first-degree murder as to Bryant on the theory of premeditation and deliberation. "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Conner*, 335 N.C. at 635, 440 S.E.2d at 835-36. "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish

an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836. A defendant's conduct before and after the killing is a circumstance to be considered in determining whether he acted with premeditation and deliberation. *State v. Vaughn,* 324 N.C. 301, 305, 377 S.E.2d 738, 740 (1989).

In the instant case the State's evidence tended to show that defendant knew Bryant had been kidnapped and was in the trunk of the car he was driving. Defendant drove to the spot where the killing occurred and waited in the car while Braxton took the victim out of the trunk, walked the victim into the woods, and then came back alone. Defendant then drove away with Braxton. Such evidence, taken in the light most favorable to the State, permits a reasonable inference that defendant premeditated and deliberated the killing; and the trial court did not err in denying defendant's motion to dismiss. This assignment of error is overruled.

For the foregoing reasons we conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.