STATE OF NORTH CAROLINA v. DANNY DEAN FROGGE

No. 413A95-2

(Filed 5 May 2000)

**1. Constitutional Law— self-incrimination—first-degree murder—second trial—introduction of prior testimony—testimony by defendant—defendant's waiver of objection—no prejudice**

Assuming without deciding that there was error in introducing defendant's prior testimony from his first capital sentencing proceeding during the guilt-innocence phase of the second trial for the first-degree murders of his father and stepmother, defendant was not prejudiced because: (1) there was no constitutional violation compelling defendant to testify during the first sentencing proceeding in violation of his right against self-incrimination since the violation in the first trial was based on the admission of hearsay of a jailhouse informant, not wrongfully obtained confessions, and the declarant in defendant's first trial testified and was subject to cross-examination; (2) defendant testified on his own behalf at the second trial after the trial court held the evidence was admissible and the prior testimony was read into evidence, thus losing the benefit of his previous objection and waiving review of this issue; and (3) any error was cured when defendant took the stand and gave testimony similar to the prior testimony read into evidence.

**2. Robbery— dangerous weapon—motion to dismiss— waiver—vindictive prosecution—continuous transaction— sufficiency of evidence**

The trial court did not err in defendant's case for the first-degree murders of his father and stepmother by failing to dismiss the charge of robbery with a dangerous weapon of his father based on vindictive prosecution and insufficient evidence because: (1) defendant waived his right to object to any impropriety in the indictment by failing to make a motion to dismiss the indictment for robbery with a dangerous weapon; and (2) the evidence taken in the light most favorable to the State supports the inference that the robbery was part of a continuous chain of events when the wallet was found lying open in front of the victim-father's body, the wallet contained a driver's license and other papers without any money, there was a drop and a smear of

blood inside the wallet, defendant admitted the blood inside the wallet could have come from his hand, and defendant admitted he removed twenty-five or twenty-six dollars.

**3. Sentencing— capital—robbery with a dangerous weapon— aggravating circumstance—sufficiency of evidence**

The trial court did not err in defendant's case for the first-degree murders of his father and stepmother by submitting the charge of robbery with a dangerous weapon of his father at the sentencing proceeding as an aggravating circumstance under N.C.G.S. § 15A-2000(e)(5), because: (1) the underlying felony may be submitted as an aggravating factor if a defendant is convicted of first-degree murder based on both premeditation and deliberation and the felony murder rule; and (2) the evidence of the robbery with a dangerous weapon was sufficient.

**4. Sentencing— capital—death penalty not disproportionate**

The trial court did not err by imposing the death sentence for the murder of defendant's stepmother because: (1) defendant was convicted of two counts of first-degree murder based on premeditation and deliberation and the felony murder rule; and (2) the jury found the submitted aggravating circumstances of N.C.G.S. § 15A-2000(e)(3), § 15A-2000(e)(5), § 15A-2000(e)(9), and § 15A-2000(e)(11), all four of which had been held sufficient standing alone to support a sentence of death.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by McHugh, J., on 27 March 1998 in Superior Court, Forsyth County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments was allowed by the Supreme Court on 31 August 1999. Heard in the Supreme Court 13 September 1999.

*Michael F. Easley, Attorney General, by David Roy Blackwell, Special Deputy Attorney General, for the State.*

*David B. Freedman, Dudley A. Witt, and Laurie A. Schlossberg for defendant-appellant.*

WAINWRIGHT, Justice.

Indictments dated 20 March 1995, and superseding indictments dated 3 July 1995, charged defendant Danny Dean Frogge with the

first-degree murders of his father, Robert Edward Frogge, and his stepmother, Audrey Yvonne Frogge. He was tried capitally at the 28 August 1995 Criminal Session of Superior Court, Forsyth County. The jury found defendant guilty of both murders on the basis of premeditation and deliberation and under the felony murder rule. After a capital sentencing proceeding, the jury recommended and the trial court imposed a sentence of life imprisonment for the murder of Robert Frogge and a sentence of death for the murder of Audrey Frogge. On appeal, this Court found reversible error in the guilt-innocence phase of defendant's first trial and ordered a new trial. *State v. Frogge*, 345 N.C. 614, 481 S.E.2d 278 (1997) (*Frogge I*).

After the remand, on 20 January 1998, defendant also was indicted for robbery with a dangerous weapon of his father on the night the murders took place. Defendant was retried capitally at the 16 March 1998 Criminal Session of Superior Court, Forsyth County. The jury again found defendant guilty on both counts of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. In addition, the jury found defendant guilty of robbery with a dangerous weapon. As defendant was previously sentenced to life imprisonment for the murder of his father, the trial court imposed the same sentence for the conviction on retrial and imposed a concurrent term of imprisonment for the robbery conviction. A capital sentencing proceeding was conducted for the conviction regarding defendant's stepmother, and the jury again recommended a sentence of death. On 27 March 1998, the trial court sentenced defendant to death. Defendant appeals as of right from his conviction for the first-degree murder of his stepmother. On 31 August 1999, this Court granted defendant's motion to bypass the Court of Appeals as to his remaining convictions.

The State's evidence at defendant's second trial tended to show that defendant stabbed his father and bedridden stepmother to death. At the time of the murders, defendant lived with his father and stepmother at their home in Winston-Salem. Defendant's father did not work, and his stepmother had been confined to her bed for over two years. Defendant worked part-time and helped around the house, but paid no rent.

Between 4:00 and 4:30 a.m. on 5 November 1994, the Winston-Salem Police Department received a 911 call from a person who identified himself as Danny Frogge. Frogge reported that his parents were dead. When Winston-Salem police officers arrived at the scene, they

found the bodies of Robert and Audrey Frogge in their bedroom. Robert Frogge was found on the floor lying on his left side with bloodstains on his shirt and arms. He had sustained ten stab wounds. A leather wallet, containing his driver's license and miscellaneous papers but no money, was found next to his body. The wallet, which was lying open, had a drop and a smear of blood inside. Near the wallet, a white, bloodstained sock was found. An iron bar from a lawnmower was found under Robert Frogge's body. Audrey Frogge was found in her hospital-type bed with bloodstains on her chest and arms. She had sustained eleven stab wounds to her chest. In addition, she suffered defensive knife wounds to her hand. A hospital-type rolling table stood beside the bed. Dr. Patrick Lantz, a forensic pathologist, opined that the angle of the stab wounds indicated the person stabbing Audrey Frogge either stood at the edge of the bed beside the table or climbed on the bed itself to deliver the blows.

Outside the home near the back porch, the officers found a bloodstained butcher knife. Just beyond the edge of the woods behind the house, the officers found men's clothing, including a pair of blue work pants, a pink tee shirt with red stains, a pair of men's underwear, and a white sock which contained bloodstains and blood spatter. The white sock appeared to match the sock found near Robert Frogge's body. The officers also collected several pairs of white underwear and blue work pants from defendant's bedroom which appeared similar to those found in the woods.

While talking further with the officers that night, defendant appeared calm and showed no signs of emotion. In a statement to Winston-Salem Police Detective Sergeant Dennis Scales, defendant claimed that on the day of the murders he had been in and out of the house on numerous occasions taking care of his stepmother and preparing her supper. After a night of drinking and crack cocaine use with friends, he returned to the home at approximately 4:00 a.m. and found his parents murdered.

The State also offered into evidence defendant's testimony from the sentencing proceeding of his first trial. This testimony included the following: On the day of the murders, defendant worked around the house and later met with Earl Autrey, Audrey Frogge's son-in-law, at approximately 2:00 p.m. The two began drinking. Defendant went back to his parents' home to prepare supper for his stepmother and later returned to Autrey's home to continue drinking. Subsequently,

defendant returned to his parents' home. Defendant had consumed almost an entire pint of liquor and several beers. Defendant's father awoke from a nap between 8:00 and 8:30 p.m. and began to argue with defendant about his drinking. Defendant could not recall what he said to his father; however, his father became so upset that he took an iron bar from a lawnmower and jabbed and hit defendant four or five times. Defendant got up, went to the kitchen, and retrieved a butcher knife. He recalled stabbing his father three or four times while his father held the iron bar. Defendant did not remember stabbing his stepmother, but admitted that he must have done it. He then took approximately twenty-five or twenty-six dollars from his father's wallet. Defendant attempted to wash the blood from his hands. He then changed clothes and threw the soiled clothes in the woods behind the house. When asked how blood got inside his father's wallet, defendant stated that he did not know, but admitted it might have dropped from his hand. Defendant left and went to Kim Dunlap's house. He and Dunlap then rode with Dunlap's sister to downtown Winston-Salem. They used the money defendant had taken from his father's wallet to purchase crack cocaine. After smoking the crack, defendant and Dunlap returned to defendant's parents' home in a taxicab around 4:00 or 4:30 a.m. Defendant entered the house, but returned to the taxicab and said that his parents were dead. He then called the police.

Defendant elected to testify on his own behalf at his second trial. His testimony was similar to that given at his first sentencing proceeding. He testified he served over four years in prison for a previous second-degree murder conviction and that he saved $8,000 to purchase a mobile home where he resided for six months after his release. Thereafter he returned to live with his father and stepmother. Defendant again admitted killing his father and stepmother and stated that after the murders, he changed his clothes and washed his hands. His testimony differed somewhat in that defendant claimed he did not take the money from his father's wallet until after he had washed his hands and was preparing to leave the house approximately thirty minutes after the murders. Defendant again admitted purchasing crack cocaine with the money he took from his father's wallet.

[1] In defendant's first assignment of error, he contends the trial court erred in allowing the State to introduce defendant's testimony from the sentencing proceeding of the first trial during the guilt-innocence phase of the second trial on the ground that it

constituted a violation of his Fifth Amendment privilege against self-incrimination.

Prior to the second trial, the State filed a "Notice of Intent to Use and Motion *in Limine*" to admit defendant's sentencing proceeding testimony. The trial court, after hearing testimony on the State's motion, held the prior statements to be admissible in the guilt-innocence phase of the second trial. Specifically, the trial court stated that "defendant . . . has failed to show that he was compelled to testify due to the admission of any unconstitutionally obtained evidence and if there is not compulsion resting on the defendant's testimony in the first trial, . . . there is no violation of any Fifth Amendment rights against self-incrimination."

Defendant contends the introduction of the prior testimony was error because it was compelled by a constitutional violation in the first trial. Defendant primarily relies on two cases: *Harrison v. United States*, 392 U.S. 219, 20 L. Ed. 2d 1047 (1968), where the United States Supreme Court, using the "fruit of the poisonous tree" theory, held that the principle which prohibits the use of wrongfully obtained confessions also prohibits the use of any testimony impelled by the confessions because it violates the Fifth Amendment right against self-incrimination, and *Lilly v. Virginia*, 527 U.S. 116, 144 L. Ed. 2d 117 (1999), where the United States Supreme Court held the defendant's Sixth Amendment Confrontation Clause rights were violated when the trial court admitted the out-of-court, inculpatory statements of an unavailable codefendant because the declarant was not subject to cross-examination. Defendant argues *Harrison* and *Lilly* preclude the State's use of defendant's prior testimony because it was induced by an unconstitutional conviction.

In *Frogge I*, a jailhouse informant's prior inconsistent statement to the police as to what defendant told him about the murders was admitted into evidence. We concluded that defendant was unfairly prejudiced "[b]ecause the evidence of this [inconsistent] statement was hearsay inadmissible for the purposes of corroboration and because the trial court improperly admitted the statement under the guise of corroboration." *Frogge*, 345 N.C. at 618, 481 S.E.2d at 280. Our holding was guided by case law on N.C.G.S. § 8C-1, Rule 613, an evidentiary rule. There was no Confrontation Clause violation in *Frogge I* because the informant was available for cross-examination. This issue is not before the Court in this case (*Frogge II*) because the informant's testimony was not introduced in the second trial.

STATE v. FROGGE

[351 N.C. 576 (2000)]

"Prior statements of a witness which are inconsistent with his present testimony are not admissible as substantive evidence because of their *hearsay* nature." *State v. Mack*, 282 N.C. 334, 339, 193 S.E.2d 71, 75 (1972) (emphasis added); *see also State v. Bishop*, 346 N.C. 365, 387, 488 S.E.2d 769, 780 (1997). On the issue of violations of the Confrontation Clause because of the admission of hearsay, the United States Supreme Court has stated, "Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements." *Idaho v. Wright*, 497 U.S. 805, 814, 111 L. Ed. 2d 638, 651 (1990).

The cases cited by defendant are distinguishable from the instant case. In *Harrison*, wrongfully obtained confessions were introduced during the first trial; thus, the defendant felt compelled to testify because of the constitutional violation. However, in the instant case, the violation in the first trial was based on the admission of hearsay, not wrongfully obtained confessions. "[I]f defendant's testimony at his first trial was induced by evidence which was inadmissible under the rules of evidence, and not because it was unconstitutionally obtained, the *Harrison* exception to the general rule permitting the testimony to be offered at the second trial would not apply." *State v. Hunt*, 339 N.C. 622, 638, 457 S.E.2d 276, 285 (1994). In *Lilly*, out-of-court, inculpatory statements of an unavailable codefendant were admitted; thus, the defendant could not confront the unavailable declarant. However, unlike the situation in *Lilly*, the declarant in defendant's first trial testified and was subject to cross-examination. Thus, there was no constitutional error in his first trial.

Moreover, there was nothing compelling defendant to testify during the first sentencing proceeding. "[T]he policies of the privilege against compelled self-incrimination are not offended when a defendant in a capital case yields to the pressure to testify on the issue of punishment at the risk of damaging his case on guilt." *McGautha v. California*, 402 U.S. 183, 217, 28 L. Ed. 2d 711, 732 (1971).

However, we need not and do not determine whether it was error to introduce the testimony from the first sentencing proceeding into evidence during the guilt-innocence phase of the second trial because, by testifying, defendant waived review of this issue.

It is well settled that "[w]here evidence is admitted over objection, and the same evidence has been previously admitted or is later

admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984). As stated in *Hunt*, " '[a] defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives.' " *Hunt*, 339 N.C. at 638, 457 S.E.2d at 285 (quoting *Harrison*, 392 U.S. at 222, 20 L. Ed. 2d at 1051); *accord State v. Terry*, 337 N.C. 615, 624, 447 S.E.2d 720, 725 (1994) (where this Court held "defendant waived his objection to [the admission of his statement to police] when he testified on direct examination that he had made this statement, that the statement was not true, and that he made it because he was afraid of going to jail").

In the instant case, defendant objected to the introduction of his prior testimony from the first sentencing proceeding in the guilt-innocence phase of the second trial. The trial court held the evidence admissible, and the prior testimony was read into evidence at the second trial. However, defendant then testified on his own behalf. As a result, defendant lost the benefit of his previous objection and waived review of this issue. *Hunt*, 339 N.C. at 638, 457 S.E.2d at 285.

Nevertheless, assuming without deciding there was error in introducing the prior testimony, defendant was not prejudiced. " '[T]he admission of evidence as to facts which the defendant admitted in his own testimony, cannot be held prejudicial.' " *State v. Wills*, 293 N.C. 546, 549, 240 S.E.2d 328, 330 (1977) (quoting *State v. Adams*, 245 N.C. 344, 349, 95 S.E.2d 902, 906 (1957)). Moreover, any error was cured when defendant took the stand and gave testimony similar to the prior testimony read into evidence.

> To hold that a defendant in a criminal action, *once evidence has been erroneously admitted over his objection,* may then take the stand, testify to exactly the same facts shown by the erroneously admitted evidence, and from that point embark upon whatever testimonial excursion he may choose to offer as justification for his conduct, without thereby curing the earlier error, gives to the defendant an advantage not contemplated by the constitutional provisions forbidding the State to compel him to testify against himself.

*State v. McDaniel*, 274 N.C. 574, 584, 164 S.E.2d 469, 475 (1968) (emphasis added).

[2] In defendant's second assignment of error, he contends the trial court erred in failing to dismiss the charge of robbery with a danger-

ous weapon because the charge was a result of vindictive prosecution and the evidence was insufficient as a matter of law to support a conviction. Additionally, defendant argues that because there was insufficient evidence of robbery with a dangerous weapon, the trial court erred in submitting this at the sentencing proceeding as an aggravating circumstance. *See* N.C.G.S. § 15A-2000(e)(5) (1997). We disagree.

We first address defendant's contention that the indictment was improper because of vindictive prosecution. A defendant waives objection to the impropriety of an indictment by not making a motion to dismiss the indictment. *See* N.C.G.S. §§ 15A-952(e), 15A-955(1) (1997); *see also State v. Robinson*, 327 N.C. 346, 361, 395 S.E.2d 402, 411 (1990); *State v. Lynch*, 300 N.C. 534, 542, 268 S.E.2d 161, 166 (1980). "Under the common law of this State a motion to quash the indictment could be made as of right only up to the time the defendant entered his plea. Thereafter, the motion was addressed to the sound discretion of the trial judge." *State v. Phillips*, 297 N.C. 600, 606, 256 S.E.2d 212, 215 (1979).

In the instant case, defendant made no motion to the trial court to dismiss the indictment for robbery with a dangerous weapon. As such, defendant waived his right to object to any impropriety in the indictment. This argument is without merit.

We next address defendant's argument that there was insufficient evidence to support the conviction for robbery with a dangerous weapon. Defendant made a motion to dismiss the robbery charge at the close of the State's evidence. The trial court heard arguments, denied the motion, and concluded "the evidence being taken in the light most favorable to the State at this time could support a finding that the robbery was part of a continuous transaction." Defendant renewed his motion at the close of all the evidence. Again, the trial court denied the motion, stating "the jury can infer that the act of taking property from the body of the victim was part of the continuous chain of events."

It is well settled that to withstand a motion to dismiss, "the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). " 'Whether evidence

presented constitutes substantial evidence is a question of law for the court.' " *State v. Stager*, 329 N.C. 278, 322, 406 S.E.2d 876, 901 (1991) (quoting *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)).

The essential elements of the offense of robbery with a dangerous weapon are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." *Call*, 349 N.C. at 417, 508 S.E.2d at 518; *see also* N.C.G.S. § 14-87(a) (1993); *State v. Small*, 328 N.C. 175, 400 S.E.2d 413 (1991). "[T]he defendant's use or threatened use of a dangerous weapon must precede or be concomitant with the taking, or be so joined with it in a continuous transaction by time and circumstances as to be inseparable." *State v. Hope*, 317 N.C. 302, 306, 345 S.E.2d 361, 364 (1986); *see also State v. Fields*, 315 N.C. 191, 201-02, 337 S.E.2d 518, 525 (1985).

The trial court examines the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. *Call*, 349 N.C. at 417, 508 S.E.2d at 518. "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988); *see also State v. Thomas*, 350 N.C. 315, 343, 514 S.E.2d 486, 503, *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 388 (1999).

In the instant case, the State's evidence tended to show the wallet was found lying open in front of the victim's body. The wallet contained a driver's license and other papers, but no money. Inside the wallet were a drop and a smear of blood. During defendant's testimony at the sentencing phase of his first trial, he admitted that the blood inside the wallet could have come from his hand. While testifying at the second trial, defendant admitted he removed about twenty-five or twenty-six dollars from the wallet and he changed his clothes and cleaned up before leaving. However, on cross-examination at the second trial, defendant could not explain the presence of blood inside the wallet if he did not take the money until after cleaning up and disposing of the murder weapon and bloody clothes. This evidence supports a reasonable inference that the blood was dropped in the wallet when defendant removed the money from the wallet immediately after the murder.

Thus, the jury could reasonably infer there was "one continuous transaction with the element of use or threatened use of a dangerous

STATE v. FROGGE

[351 N.C. 576 (2000)]

weapon so joined in time and circumstances with the taking as to be inseparable." *Hope*, 317 N.C. at 306, 345 S.E.2d at 364. Applying the foregoing principles, we conclude the State introduced sufficient evidence to permit a rational trier of fact to find beyond a reasonable doubt defendant committed the offense of robbery with a dangerous weapon.

**[3]** Finally, we address defendant's argument that there was insufficient evidence for the trial court to submit robbery with a dangerous weapon as an aggravating circumstance at the sentencing proceeding. *See* N.C.G.S. § 15A-2000(e)(5).

The trial court, in determining the sufficiency of the evidence to support the existence of an aggravating circumstance, must consider the evidence in the light most favorable to the State. *State v. Leary*, 344 N.C. 109, 119, 472 S.E.2d 753, 759 (1996); *State v. Quick*, 329 N.C. 1, 31, 405 S.E.2d 179, 197 (1991). "The State is entitled to every reasonable inference to be drawn from the evidence, contradictions and discrepancies are for the jury to resolve, and all evidence admitted that is favorable to the State is to be considered." *Leary*, 344 N.C. at 119, 472 S.E.2d at 759.

If a defendant is convicted of first-degree murder based on both premeditation and deliberation and the felony murder rule, the underlying felony may be submitted as an aggravating circumstance under N.C.G.S. § 15A-2000(e)(5). *See Thomas*, 350 N.C. at 344, 514 S.E.2d at 504; *State v. McNeill*, 346 N.C. 233, 241, 485 S.E.2d 284, 289 (1997), *cert. denied*, 522 U.S. 1053, 139 L. Ed. 2d 647 (1998); *State v. Davis*, 340 N.C. 1, 455 S.E.2d 627, *cert. denied*, 516 U.S. 846, 133 L. Ed. 2d 83 (1995).

In the instant case, the jury found defendant guilty of first-degree murder based on both premeditation and deliberation and the felony murder rule for both victims. As discussed previously, the evidence of robbery with a dangerous weapon was sufficient. As a result, the trial court did not err in submitting the (e)(5) aggravating circumstance. *See Thomas*, 350 N.C. at 344, 514 S.E.2d at 504. Thus, defendant's argument is without merit.

## PROPORTIONALITY REVIEW

**[4]** Finally, defendant contends the death sentence imposed for the murder of his stepmother was excessive or disproportionate. Having concluded that defendant's capital sentencing proceeding was free from prejudicial error, it is our statutory duty to ascertain (1)

whether the evidence supports the jury's findings of the aggravating circumstances upon which the sentence of death was based; (2) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

In the instant case, defendant was convicted of two counts of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. Because defendant had previously received a sentence of life imprisonment for the murder of his father, he could not be sentenced to death at retrial. Following a capital sentencing proceeding for the murder of defendant's stepmother, the jury found the following submitted aggravating circumstances: (1) defendant had been previously convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3); (2) the murder was committed while defendant was engaged in the commission of robbery with a dangerous weapon of Robert Frogge, N.C.G.S. § 15A-2000(e)(5); (3) the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and (4) the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against other persons, N.C.G.S. § 15A-2000(e)(11).

Three statutory mitigating circumstances were submitted for the jury's consideration, but were not found: (1) the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (2) defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, N.C.G.S. § 15A-2000(f)(6); and (3) the catchall mitigating circumstance that there existed any other circumstance arising from the evidence which the jury deemed to have mitigating value, N.C.G.S. § 15A-2000(f)(9). Of the ten nonstatutory mitigating circumstances submitted, six were found by the jury to exist and have mitigating value.

After a thorough review of the record, including the transcripts, briefs, and oral arguments, we conclude the evidence fully supports the aggravating circumstances found by the jury. Further, we find no indication the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We therefore turn to our final statutory duty of proportionality review.

The purpose of proportionality review is to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). In conducting proportionality review, we compare the present case with other cases in which this Court has concluded the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). This Court has determined the death sentence to be disproportionate on seven occasions: *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We conclude this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. Defendant was convicted of two counts of first-degree murder. This Court has never found a sentence of death disproportionate in a case where the jury has found a defendant guilty of murdering more than one victim. *State v. Goode*, 341 N.C. 513, 552, 461 S.E.2d 631, 654 (1995). In addition, the jury convicted defendant under the theory of premeditation and deliberation. This Court has stated "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

Finally, there are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to support a sentence of death. *See State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994) (those circumstances are found in N.C.G.S. § 15A-2000(e)(3), (e)(5), (e)(9), and (e)(11)), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). In this case, the jury found all four.

We also compare this case with the cases in which this Court has found the death penalty to be proportionate. While we review all of the cases in the pool of "similar cases" when engaging in our statutorily mandated duty of proportionality review, we reemphasize that we will not undertake to discuss or cite all of those cases each time we carry out that duty. *State v. Williams*, 308 N.C. 47, 81, 301 S.E.2d 335, 356, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). This case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

Accordingly, we conclude defendant received a fair trial and capital sentencing proceeding, free from prejudicial error, and the sentence of death recommended by the jury and entered by the trial court is not disproportionate.

NO ERROR.