STATE OF NORTH CAROLINA v. MICHAEL LEE DUFF

No. COA04-1241

(Filed 19 July 2005)

**1. Appeal and Error— preservation of issues—failure to argue**

The original assignments of error that defendant did not present arguments for in his brief are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

**2. Confessions and Incriminating Statements— custodial statements—motion to suppress—voluntariness**

The trial court did not err in a felonious breaking and entering, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury case by denying defendant's motion to suppress his custodial statement even though defendant contends it resulted from unconstitutional threats or coercion on the part of law enforcement officers, because the totality of circumstances revealed that: (1) defendant was aware of his constitutional right to remain silent when he chose to speak; (2) a detective testified that prior to being asked whether his wife was involved, defendant said he was there and asked officers what the video showed; and (3) both officers testified that at no point did they indicate to defendant that his wife would be charged if he did not confess, nor did they promise defendant anything if he offered a confession.

**3. Confessions and Incriminating Statements— custodial statements made by defendant's wife—plain error analysis**

The trial court did not commit plain error in a felonious breaking and entering, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury case by permitting a detective to testify regarding the custodial statements made by defendant's wife, because: (1) the State introduced evidence that an employee at the pertinent hotel saw defendant get on the elevator with the victim shortly before she was attacked; (2) the victim identified defendant as the individual who attacked her, and defendant confessed that he attacked the victim in her hotel room in order to obtain money and that he was "cracked up" during the incident; and (3) the jury would not have reached a different verdict absent the alleged error.

**4. Robbery— dangerous weapon—motion to dismiss**

The trial court erred by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon based on insufficient evidence that defendant possessed or used a dangerous weapon, implement, or means during the attack, and the case is remanded with instructions to enter judgment on the offense of common law robbery, because: (1) fists, hands, and feet cannot be considered dangerous weapons for the purpose of N.C.G.S. § 14-87 despite prior holdings that under certain circumstances a defendant's hands, fists, and feet can be considered deadly weapons for the purposes of an assault conviction; (2) our legislature intended the "means" employed by an armed robber to consist of some extraneous instrument similar to a "firearm," "implement," or "other dangerous weapon;" and (3) there is no indication that the victim's life was threatened or endangered by an armed individual.

**5. Assault— deadly weapon with intent to kill inflicting serious injury—motion to dismiss**

The trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury even though defendant contends there was insufficient evidence of his intent to kill, because: (1) although evidence that a defendant threatened to kill his victim unless his demands are met is merely indicative of a conditional intent to kill, in the instant case the State also presented evidence tending to show that after locating her money, defendant began to beat the victim repeatedly with his fists, he kicked and dragged her, and defendant pounded the victim's head on the wall of the hotel until she lost consciousness; and (2) the victim was virtually defenseless during the attack, and she suffered vertigo and a total loss of balance following it.

**6. Sentencing— habitual felon—violent habitual felon—reversal of convictions**

Defendant's convictions for obtaining habitual felon and violent habitual felon status are vacated because: (1) both indictments 03 CRS 13113 and 03 CRS 13115 relied upon defendant's conviction for armed robbery; and (2) defendant's armed robbery conviction was reversed.

STATE v. DUFF

[171 N.C. App. 662 (2005)]

Appeal by defendant from judgment entered 5 May 2004 by Judge E. Penn Dameron in Buncombe County Superior Court. Heard in the Court of Appeals 19 May 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

*Anne Bleyman for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Michael Lee Duff ("defendant") appeals his convictions for felonious breaking and entering, robbery with a dangerous weapon, assault with a deadly weapon with intent to kill inflicting serious injury, and obtaining habitual felon and violent habitual felon status. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error in part, but we reverse defendant's conviction for robbery with a dangerous weapon, remand the case for entry of judgment on the offense of common law robbery, and vacate defendant's convictions for obtaining habitual felon and violent habitual felon status.

The State's evidence presented at trial tends to show the following: On 28 June 2003, Geraldine MacQueen ("MacQueen") was attending a family reunion in Asheville, North Carolina. As she was returning to her room at the Days Inn, MacQueen entered an elevator with defendant, who began talking to her. Defendant and MacQueen rode the elevator to the fifth floor, where MacQueen's room was located. Defendant followed MacQueen to her room, and as MacQueen opened the door to the room, defendant pushed her inside. MacQueen turned and saw defendant standing in her room, and she "screamed and screamed, hoping some of [her] family would hear [her]." Defendant told MacQueen to "shut up[,]" that he "just wanted [her] money[,]" and that "if [she] didn't shut up he would kill" her. Defendant then put his hands on MacQueen's neck and "squeezed and twisted" it.

After she "somehow or other . . . got him to stop[,]" MacQueen located her purse and gave defendant $300.00 in cash. Defendant thereafter attacked MacQueen again, hitting her in the cheek with his fists. After defendant forced MacQueen to the floor, he repeatedly kicked her and began dragging her toward the bathroom. MacQueen believed defendant was going to "hit [her] head on the tile floor and [she] was going to be dead." Instead, defendant grabbed MacQueen

by the hair and "pounded" her head against the wall until she lost consciousness.

MacQueen was transported to a local hospital for treatment of her injuries. As a result of the attack, MacQueen was hospitalized for several days and suffered recurring nausea and vertigo. She experienced a "total loss of balance[,]" and she was unable to stand up or walk any distance. At trial, MacQueen testified that she had lost the full range of motion of her neck, continued to have problems with her balance, and continued to experience lightheadedness.

Asheville Police Department Detective Wayne Welch ("Detective Welch") and Sergeant Daryl Fisher ("Sergeant Fisher") investigated the attack. Detective Welch and Sergeant Fisher interviewed MacQueen and her family members, and they reviewed security camera footage from the Days Inn. The videotape footage depicted defendant following MacQueen into the elevator shortly before the attack. The footage also showed defendant checking into the Days Inn. Detective Welch and Sergeant Fisher showed the videotape to another occupant of the hotel, who informed the officers that the individual on the videotape had approached his room the night before asking for money. The occupant told the officers that the individual was staying in Room 505. According to hotel records, defendant was registered to Room 505 the night before MacQueen was attacked.

Defendant and his wife were subsequently located, taken into custody, and transported to the Asheville Criminal Investigation Division for questioning. Defendant thereafter confessed to taking money from MacQueen. According to Detective Welch and Sergeant Fisher, defendant did not remember kicking MacQueen and he denied choking her, but he did remember MacQueen fighting back during the incident.

On 8 September 2003, defendant was indicted for felonious breaking and entering, felonious assault inflicting serious bodily injury, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury. Through six other indictments, defendant was charged with obtaining habitual felon and violent habitual felon status.

Defendant's case proceeded to trial the week of 3 May 2004. During his trial, defendant moved the trial court to suppress his custodial statement to the law enforcement officers, arguing that his statement was not voluntary and was the result of threats against his

wife and coercion by the officers. The trial court denied defendant's motion, concluding that defendant's statement "was not induced by any promise of reward or threat of possibly bringing charges against his wife, but rather, was knowingly, voluntarily and intelligently made without threat or promise." On 5 May 2004, the jury found defendant guilty of felonious breaking and entering, felonious assault inflicting serious injury, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court subsequently submitted to the jury one charge of obtaining habitual felon status and one charge of obtaining violent habitual felon status. After a jury verdict finding defendant guilty of both charges, the trial court sentenced defendant to two consecutive terms of life imprisonment without parole for robbery with a dangerous weapon and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court arrested judgment on the felonious assault inflicting serious injury conviction, and it sentenced defendant to 133 to 139 months imprisonment for felonious breaking and entering. Defendant appeals.

**[1]** We note initially that defendant's brief does not contain arguments supporting each of the original assignments of error on appeal. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those issues argued by defendant in his brief.

The issues on appeal are whether: (I) the trial court erred by denying defendant's motion to suppress his custodial statement; (II) the trial court erred by permitting Detective Welch to testify regarding the custodial statements made by defendant's wife; (III) the trial court erred by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon; (IV) the trial court erred by failing to set aside *sua sponte* the jury's verdict on the charge of robbery with a dangerous weapon; (V) defendant received ineffective assistance of counsel; (VI) the trial court erred by denying defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury; (VII) the trial court erred by sentencing defendant as a violent habitual felon; and (VIII) the trial court erred by denying defendant's motions to dismiss the habitual felon indictments and allowing the State to amend the indictment for obtaining habitual felon status.

**[2]** Defendant first argues that the trial court erred by denying his motion to suppress his custodial statement to Detective Welch and

Sergeant Fisher. Defendant asserts that his statement was involuntary, in that it resulted from unconstitutional threats or coercion on the part of law enforcement officers. We disagree.

N.C. Gen. Stat. § 15A-977(f) (2003) requires a trial court to make findings of fact and conclusions of law to support its order granting or denying a defendant's motion to suppress evidence. Where a defendant contends that his confession to law enforcement officers was involuntary, "[s]uch findings and conclusions must be determinative on the issue of voluntariness." *State v. James,* 321 N.C. 676, 685, 365 S.E.2d 579, 585 (1988). "In making [its] determination, the trial [court] must find facts; and when the facts are supported by competent evidence, they are conclusive on the appellate courts. However, the conclusions of law drawn from the findings of fact are reviewable by the appellate courts." *State v. Booker,* 306 N.C. 302, 308, 293 S.E.2d 78, 81 (1982).

In the instant case, after hearing *voir dire* testimony from defendant, Detective Welch, and Sergeant Fisher, the trial court found that "the officers who interrogated [defendant] did not threaten to charge his wife . . . with any offense, nor did they promise to release her from custody in the event th[at] defendant were to give them a statement[.]" The trial court also found that "no offers of reward, inducements or promises were made to [] defendant in order to compel him or force him to make a statement." At the request of defendant's counsel, the trial court found further that "it was not suggested to [defendant] by the investigating officers that his wife could be charged unless he made a statement[,]" and "that the conclusion which [defendant] may have reached that his wife would be charged unless he made a confession was not suggested to him by the investigating officers, but rather was a conclusion which he reached independently on the basis of his own interpretation of events." Based upon these findings of fact, the trial court concluded that defendant's statement "was not induced by any promise or reward or threat of possibly bringing charges against his wife, but rather, was knowingly, voluntarily and intelligently made without threat or promise." After reviewing the record, we conclude that the trial court's findings of fact are supported by competent evidence, and the findings of fact support the trial court's conclusion of law.

During *voir dire*, Detective Welch testified that while defendant was in custody, he asked defendant whether his wife was involved in the attack upon MacQueen. Detective Welch testified that after

defendant told him his wife was not involved, he informed defendant that "the only way [he] could believe that she was not involved [would be for defendant] to tell [him] exactly what did happen[.]" Defendant thereafter informed the officers what happened. Detective Welch testified further that he informed defendant "near the end of our interview" that his wife would not be charged in connection with the attack. On cross-examination by the State, Detective Welch testified that he did not promise defendant anything in return for his making the statement, and he did not threaten or coerce defendant in any way.

Sergeant Fisher testified in pertinent part as follows:

Q: What, if anything, was mentioned about [defendant's] wife to [defendant] in the interrogation room?

A: Detective Welch asked [defendant] if his wife was part of this thing, and [defendant] advised that she was not. Detective Welch advised [defendant] the only way to believe him was to tell the truth, and [defendant] agreed.

Q: Did you or Detective Welch at any time say to [defendant] anything to the effect that if he doesn't talk, his wife will be charged?

A: No, sir, we did not.

Q: Did [defendant], at any time during the interrogation, express any concern about his wife and her being charged, if you recall?

A: No, he did not.

Our courts "ha[ve] long recognized the principle that mental or psychological pressure brought to bear against a defendant so as to overcome his will and induce a confession can render such a confession involuntary under the totality of the circumstances attendant." *State v. Branch*, 306 N.C. 101, 107, 291 S.E.2d 653, 658 (1982) (citing *State v. Morgan*, 299 N.C. 191, 261 S.E.2d 827, *cert. denied*, 446 U.S. 986, 64 L. Ed. 2d 844 (1980) and *State v. Roberts*, 12 N.C. 259 (1827)).

A statement by investigating law enforcement officers that a suspect's relatives will be released from custody or not be arrested if the suspect confesses may, under the totality of the circumstances, render the suspect's confession involuntary. It is generally recognized, however, that a confession is "involuntary" in the

constitutional sense in such cases only when it was produced by wrongful pressure applied by law enforcement officials or others acting for them. Confessions or admissions have not been held inadmissible in evidence merely because the accused in making the confession or admission was motivated by a desire to protect a relative threatened with arrest or in custody when such motivation originated with the accused and was not suggested by law enforcement officials.

*Id.* at 107-08, 291 S.E.2d at 658 (citations omitted).

In the instant case, as detailed above, the trial court's findings of fact are supported by competent evidence and are thus binding on appeal. Defendant was aware of his constitutional right to remain silent when he chose to speak. Detective Welch testified that prior to being asked whether his wife was involved, defendant said, "I was there[,]" and he asked the officers, "What does the video show?" Both officers testified that at no point did they indicate to defendant that his wife would be charged if he did not confess, nor did they promise defendant anything if he offered a confession. Based upon our review of the totality of the circumstances, we conclude that defendant was not coerced into confession due to threats made against his wife or suggested by law enforcement officials. Accordingly, we overrule defendant's first argument.

**[3]** Defendant next argues that the trial court committed plain error by permitting Detective Welch to testify regarding statements defendant's wife made to law enforcement officers. The State contends that defendant has not properly preserved this issue for appeal because, in his brief, defendant fails to offer any argument supporting his assignment of plain error to the issue. We note that "[t]he right and requirement to specifically and distinctly contend an error amounts to plain error does not obviate the requirement that a party provide argument supporting the contention that the trial court's [alleged error] amounted to plain error[.]" *State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). Therefore, an "empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule." *Id.* at 637, 536 S.E.2d at 61. Nevertheless, in our discretion pursuant to N.C.R. App. P. 2, we have chosen to review defendant's plain error argument.

"A prerequisite to our engaging in a 'plain error' analysis is the determination that the [trial court's action] constitutes 'error' at all."

*State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). Once we have determined that the trial court erred, " 'before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict.' " *Id.* (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)). In the instant case, defendant contends that the trial court erred by allowing Detective Welch to testify that defendant's wife informed him that defendant had a cocaine problem and that defendant had told her that he "had done something bad[.]" However, assuming *arguendo* that the trial court erred, we nevertheless conclude that defendant has failed to meet the heavy burden of plain error review. At trial, the State introduced evidence tending to show that defendant was registered at Room 505 of the Days Inn the night before MacQueen was attacked, and that an employee of the hotel saw defendant get on the elevator with MacQueen shortly before she was attacked. MacQueen identified defendant as the individual who attacked her, and, as discussed above, defendant confessed that he attacked MacQueen in her hotel room in order to obtain money and that he "was cracked up" during the incident. In light of the foregoing, we are not convinced that absent the trial court's alleged error, the jury probably would have reached a different verdict. Accordingly, we overrule defendant's second argument.

**[4]** Defendant next argues that the trial court erred by denying his motion to dismiss the charge of robbery with a dangerous weapon. Defendant asserts that the State failed to demonstrate that he either possessed or used a dangerous weapon, implement, or means during the attack. We agree.

In order to withstand a motion to dismiss a charge of robbery with a dangerous weapon, the State must present substantial evidence that the defendant: (1) unlawfully took or attempted to take personal property from a person or in the presence of another; (2) by the use or threatened use of a dangerous weapon, implement, or means; and (3) thereby endangered or threatened the life of a person. *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002); N.C. Gen. Stat. § 14-87(a) (2003). In the instant case, in the indictment charging defendant with robbery with a dangerous weapon, the State asserted that "defendant committed this act by means of an assault consisting of having in possession and threatening the use of his feet, hands and fists, whereby the life of [MacQueen] was threatened and endangered." Defendant contends that fists, hands, and feet cannot

be considered dangerous weapons for the purposes of N.C. Gen. Stat. § 14-87. We agree.

It is well established that N.C. Gen. Stat. § 14-87 did not create a new offense. *State v. Black*, 286 N.C. 191, 193, 209 S.E.2d 458, 460 (1974); *State v. Hare*, 243 N.C. 262, 263-64, 90 S.E.2d 550, 551 (1955). Instead, the statute provides that "when firearms or other dangerous weapons are used, [a] more severe punishment may be imposed" than that allowed for common law robbery. *Black*, 286 N.C. at 193, 209 S.E.2d at 460. This is because "[t]he gist of the offense of robbery with firearms is the accomplishment of robbery by the use or threatened use of firearms or other dangerous weapons." *Id.* at 194, 209 S.E.2d at 460. A victim of common law robbery is necessarily put in fear by the violence or threat of the defendant. However, when there is an actual danger or threat to the victim's life—by the possession, use, or threatened use of a dangerous weapon—the defendant may be charged and convicted of armed robbery rather than common law robbery. *See State v. Joyner*, 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978); *State v. Moore*, 279 N.C. 455, 459, 183 S.E.2d 546, 548 (1971).

We note that N.C. Gen. Stat. § 14-87 also refers to the possession, use, or threatened use of "means" during the robbery. However, we are not convinced that "means" was included in the statute in order to reach the situation of the instant case, where a robbery was perpetrated by the use of hands, fists, or feet. "It is a recognized principle of statutory construction that when particular or specific words or acts, the subject of a statute, are followed by general words, the latter must as a rule be confined to acts and things of the same kind." *State v. Craig*, 176 N.C. 740, 744, 97 S.E. 400, 401 (1918). In N.C. Gen. Stat. § 14-87, entitled "Robbery with firearms or other dangerous weapons," the term "means" follows the terms "firearm," "other dangerous weapon," and "implement." Therefore, we conclude that our legislature intended the "means" employed by an armed robber to consist of some extraneous instrument similar to a "firearm," "implement," or "other dangerous weapon."

We recognize that this Court has previously concluded that the instrument used or threatened to be used need not be a firearm in order to be considered life-threatening or dangerous under N.C. Gen. Stat. § 14-87. *State v. Funderburk*, 60 N.C. App. 777, 778, 299 S.E.2d 822, 823 (1983). We also recognize that "[s]ince a dangerous weapon is synonymous with a deadly one, cases resolving whether a particular weapon was deadly *per se* are relevant" to the determination of whether a weapon is dangerous under N.C. Gen.

Stat. § 14-87. *State v. Wiggins*, 78 N.C. App. 405, 406, 337 S.E.2d 198, 199 (1985). However, despite our prior holdings that, under certain circumstances, a defendant's hands, fists, and feet can be considered *deadly* weapons for the purposes of an assault conviction, *see State v. Grumbles*, 104 N.C. App. 766, 771, 411 S.E.2d 407, 410 (1991), we have never held that hands, fists, and feet can be considered *dangerous* weapons for the purposes of N.C. Gen. Stat. § 14-87. Although the issue was raised in *State v. Gibbons*, 303 N.C. 484, 488, 279 S.E.2d 574, 577 (1981), our Supreme Court did not rule on the issue, concluding that because "[t]he trial judge in his charge related the facts and law concerning the use of fists as a deadly weapon only to the crime of assault with a deadly weapon[,]" the Court did not need to consider the State's "novel" argument that fists could be considered dangerous weapons.

" 'The layman's phrase "armed robbery" is not at all an inaccurate description of the offense.' " *Wright v. State*, 228 Ga. App. 779, 780, 492 S.E.2d 680, 682 (1997) (quoting *People v. Dozie*, 224 Cal. App. 2d 474, 477, 36 Cal. Rptr. 728, 730 (3rd Dist. 1964)). In the instant case, there is no indication that MacQueen's life was threatened or endangered by an "armed" individual. Defendant's only means of completing the robbery consisted of his own bare hands, fists, and feet. Common sense and the clear intent of N.C. Gen. Stat. § 14-87 lead us to conclude that an individual cannot possess, use, or threaten to use a dangerous weapon during a robbery where that individual is not possessing, using, or threatening to use some external weapon or instrument during the robbery. The "critical difference" between armed and common law robbery "is that the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened." *State v. Peacock*, 313 N.C. 554, 562, 330 S.E.2d 190, 195 (1985). Were an individual's bare hands, fists, and feet considered dangerous weapons for the purposes of N.C. Gen. Stat. § 14-87, that "critical difference" would be erased, and the crime of common law robbery would in effect merge with the crime of robbery with a dangerous weapon. We are not convinced that this result was contemplated by our legislature in enacting N.C. Gen. Stat. § 14-87. Therefore, in light of the foregoing, we conclude that an individual's bare hands, fists, and feet are not considered dangerous weapons for the purposes of N.C. Gen. Stat. § 14-87. Accordingly, we hold that the trial court erred by failing to dismiss defendant's charge of armed robbery on these grounds, and therefore we reverse defendant's armed robbery conviction. The case is

remanded to the trial court with instructions to enter judgment on the offense of common law robbery. Furthermore, because we have decided this issue in favor of defendant, we need not consider his related contentions that the trial court erred by failing to set aside *sua sponte* the verdict of guilty of robbery with a dangerous weapon or that he received ineffective assistance of counsel when his trial counsel failed to move the trial court to set aside the verdict.

**[5]** Defendant next argues that the trial court erred by denying his motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant asserts that the State produced insufficient evidence that defendant intended to kill MacQueen. We disagree.

In order to withstand a motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury, the State must present substantial evidence that the defendant: (1) assaulted the victim; (2) with a deadly weapon; (3) with an intent to kill; and (4) inflicted serious injury upon the victim which did not result in death. *James*, 321 N.C. at 687, 365 S.E.2d at 586. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

"An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred." *State v. Ferguson*, 261 N.C. 558, 561, 135 S.E.2d 626, 629 (1964) (quotation and citation omitted). Thus "[t]he defendant's intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *James*, 321 N.C. at 688, 365 S.E.2d at 586.

In the instant case, the State presented evidence tending to show that defendant approached MacQueen from behind and shoved her into her own hotel room. Once inside, defendant grabbed MacQueen, began "squeez[ing] and twist[ing]" and "wringing" her neck, and demanded her money. Although we note that evidence that a defendant threatened to kill his victim unless his demands are met is merely indicative of a "conditional intent to kill," *State v. Irwin*, 55 N.C. App.

305, 310, 285 S.E.2d 345, 349 (1982), in the instant case, the State also presented evidence tending to show that, after locating her money, defendant began to beat MacQueen repeatedly with his fists. MacQueen testified that defendant "slammed" her on the cheek, causing her to fall to the floor of the hotel room. After MacQueen fell to the floor, defendant began to kick her and drag her towards the bathroom. Defendant grabbed MacQueen by her hair and "pounded" her head on the wall of the hotel room until she lost consciousness. The evidence demonstrates that MacQueen was virtually defenseless during the attack, and she suffered vertigo and a total loss of balance following it. MacQueen testified that she continued to suffer from the injuries at defendant's trial. In light of the foregoing, we conclude that the State offered sufficient evidence to reasonably support the inference that defendant intended to kill, rather than merely injure, MacQueen. Accordingly, we overrule defendant's sixth argument.

[6] Defendant next presents several arguments regarding the propriety of his convictions and sentences for obtaining habitual felon and violent habitual felon status. As discussed above, defendant was charged with obtaining habitual felon status by four separate indictments and obtaining violent habitual felon status by two separate indictments. Prior to submission of the charges to the jury, the State agreed to proceed on only one charge of obtaining habitual felon status and only one charge of obtaining violent habitual felon status. The trial court thereafter submitted indictments 03 CRS 13113 and 03 CRS 13115 to the jury, both of which relied upon defendant's conviction for armed robbery. Because we have reversed defendant's armed robbery conviction, the resulting convictions for obtaining habitual felon and violent habitual felon status are vacated.

In light of the foregoing conclusions, we hold that defendant received a trial free of prejudicial error in part, but we reverse defendant's conviction for robbery with a dangerous weapon, remand the case for entry of judgment on the offense of common law robbery, and vacate defendant's convictions for obtaining habitual felon and violent habitual felon status.

Reversed and remanded in part; vacated in part; no error in part.

Judges McCULLOUGH and TYSON concur.