STATE OF NORTH CAROLINA
v.
ARRIS JAMES HINTON, (aka AIRRIS JAMES HINTON)
No. COA05-241
North Carolina Court of Appeals
Filed February 21, 2006
This case not for publication
Wake County No. 03 CRS 39968; 36217-18.
Attorney General Roy A. Cooper, III, by Special Deputy Attorney General James A. Wellons, for the State.
Kathryn L. VandenBerg, for defendant-appellant.
JACKSON, Judge.
Defendant, Arris James Hinton, was convicted by a jury on 6 August 2004 on charges of robbery with a dangerous weapon, assault with a deadly weapon inflicting serious injury, and assault inflicting serious bodily injury. Defendant was sentenced to consecutive sentences of seventy-seven to 102 months for the robbery with a dangerous weapon conviction and twenty-nine to forty-four months on the assault with a deadly weapon conviction. Judgment on the assault inflicting serious bodily injury conviction was arrested by the trial court. Defendant gave notice of appeal on the same date. Evidence presented by the State at trial tended to show that on 16 May 2003, Raleigh Police Officer Kenneth Newton ("Officer Newton") was dispatched to the Raleigh bus station to investigate a report of a disturbance. Officer Newton testified that when he arrived at the bus station he found defendant and his girlfriend, Pam McCullers ("McCullers"), inside arguing. Both defendant and McCullers were angry, agitated, and yelling at each other. McCullers told Officer Newton that defendant had stolen a television from her apartment. After initially questioning both defendant and McCullers, it appeared to Officer Newton that they lived together and the dispute was a civil matter. Officer Newton decided to separate the two, but was unable to recall whether he told defendant to go outside or if he went on his own initiative.
After defendant went outside, McCullers changed her story and alleged that defendant did not live with her and had broken into her house and stolen the television. Because of this new allegation which would have constituted a felony offense, Officer Newton felt that it was necessary to investigate further and went to speak with defendant again. Officer Newton testified that he remembered nothing beyond that point until he woke up in the hospital the following day.
Elvester Trotter ("Trotter"), a passenger on one of the buses parked at the station at the time of the incident, testified that he saw Officer Newton approach defendant and speak to him. Trotter testified that it appeared that Officer Newton was directing defendant back toward the bus terminal. Trotter further testified that it then appeared that Officer Newton attempted to restrain defendant by grabbing his wrists. After Officer Newton grabbed defendant's wrists, defendant brought his arms up and pushed Officer Newton backwards. Trotter testified that the physical altercation began approximately two feet in front of the bus in which he was sitting and approximately ten to fifteen feet from the wall of the terminal. At no time did Trotter see Officer Newton push defendant against the wall or put his hands around defendant's neck.
After defendant pushed Officer Newton backwards they both went towards the rear of the bus past the door and out of Trotter's sight momentarily. Trotter did not observe any luggage on the ground in the area of defendant and Officer Newton. After defendant and Officer Newton passed the door of the bus out of his sight, Trotter stepped out of the bus door and observed defendant on top of Officer Newton, who was on the ground on his back, striking him with his fists at least four times. Trotter testified that Officer Newton appeared to be unconscious as he was not moving and his arms were down at his sides. Trotter did not see Officer Newton attempt to reach anything on his belt or attempt to defend himself in any way. Trotter then observed defendant remove Officer Newton's handgun from its holster and hold it up in the air. Trotter then got back on the bus, closed the door and warned the other passengers to get down. Trotter did not see defendant after that time. Defendant was then observed by several people at the bus station running around the end of the bus station and pointing Officer Newton's handgun at people in the bus station. Defendant dropped the gun after observing several police officers approaching the area. Several people at the bus station pointed out defendant to the responding officers who observed defendant waving his arms in the air. The officers also heard defendant saying "the gun is over there." The officers approached defendant and ordered him to get on the ground, which defendant did. Officers then took defendant into custody without incident.
Defendant was tried on the charges of robbery with a dangerous weapon, assault with a deadly weapon inflicting serious bodily injury, and assault inflicting serious bodily injury on 3 August 2004. Defendant was found guilty of all charges by a jury on 6 August 2004. Defendant was sentenced to seventy-seven to 102 months for the robbery with a dangerous weapon conviction and twenty-nine to forty-four months for the assault with a deadly weapon inflicting serious bodily injury conviction. Defendant's sentences were to run consecutively. The trial court arrested judgment on the assault inflicting serious bodily injury conviction. Defendant gave notice of appeal 6 August 2004.
On appeal defendant argues that the trial court erred in denying his motion to dismiss the charge of robbery with a dangerous weapon for insufficient evidence and asks this Court to review Officer Newton's personnel records for evidence favorable and material to him. When reviewing a trial court's denial of a motion to dismiss for insufficient evidence, our standard of review is whether the State has offered substantial evidence of each required element of the offense charged. State v. Williams, 154 N.C. App. 176, 178, 571 S.E.2d 619, 620 (2002). Evidence that is relevant and sufficient to persuade a rational juror to accept a particular conclusion is substantial evidence. State v. Frogge, 351 N.C. 576, 584, 528 S.E.2d 893, 899, cert. denied, 531 U.S. 994, 148 L. Ed. 2d 459 (2000). In deciding a motion to dismiss for insufficient evidence, the evidence must be viewed in the light most favorable to the State and every reasonable inference drawn from the evidence must be afforded to the State. Id. at 585, 528 S.E.2d at 899. Defendant argues that the evidence at trial was insufficient to support the elements of the offense of robbery with a dangerous weapon.
"In order to withstand a motion to dismiss a charge of robbery with a dangerous weapon, the State must present substantial evidence that the defendant: (1) unlawfully took or attempted to take personal property from a person or in the presence of another; (2) by the use or threatened use of a dangerous weapon, implement, or means; and (3) thereby endangered or threatened the life of a person." State v. Duff, __ N.C. App. __, __, 615 S.E.2d 373, 379-80 (2005) (citing State v. Kemmerlin, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002)); see also N.C. Gen. Stat. § 14-87(a) (2003). "The State also must demonstrate that the defendant had the intent to deprive the owner of his property at the time of taking." Kemmerlin, 356 N.C. at 473, 573 S.E.2d at 889 (citing State v. Richardson, 308 N.C. 470, 474, 302 S.E.2d 799, 802 (1983)).
First, defendant argues the State's evidence was insufficient to show that he intended to deprive Officer Newton permanently of his gun. Defendant contends his testimony that he only took the gun to prevent Officer Newton from shooting him in the back and the fact that he surrendered the weapon to responding officers shortly after taking it show he had no intention of permanently depriving Officer Newton of his gun. However, when the evidence is viewed in the light most favorable to the State, this evidence is far from conclusive of defendant's lack of intent.
Trotter's eyewitness testimony contradicts defendant's account that Officer Newton attempted to draw his weapon from its holster prior to defendant's taking the gun. Trotter testified that he did not see Officer Newton attempt to defend himself in any way or attempt to reach anything on his duty belt. Viewed in the light most favorable to the State, this evidence is more than sufficient to support the conclusion that defendant did not take Officer Newton's gun in self-defense.
Our appellate courts also have held consistently that the taking of a gun to prevent its use against the taker can support a finding that it was taken with the intent to deprive the owner of it permanently. State v. Webb, 309 N.C. 549, 556, 308 S.E.2d 252, 256 (1983); State v. Smith, 268 N.C. 167, 150 S.E.2d 194 (1966);State v. Montgomery, 12 N.C. App. 94, 96-97, 182 S.E.2d 668, 670, cert. denied, 279 N.C. 513, 183 S.E.2d 689 (1971). Where the evidence does not permit the inference that defendant ever intended to return the property forcibly taken but requires the conclusion that defendant was totally indifferent as to whether the owner ever recovered the property, there is no justification for indulging the fiction that the taking was for a temporary purpose, without any animus furandi [intent to steal] or lucri causa [for the sake of gain].
Smith, 268 N.C. at 172, 150 S.E.2d at 200. In the case sub judice, evidence was presented that arguably could support either the conclusion that defendant did not intend to deprive Officer Newton of his gun permanently or that he did have such an intent. Accordingly, this assignment of error is overruled.
Defendant next argues that a defendant's use of his or her hands cannot be used to support the "use or threatened use of a dangerous weapon, implement, or means" element of the offense of robbery with a dangerous weapon in North Carolina. This issue was unequivocally decided by this Court recently in Duff, __ N.C. App. __, 615 S.E.2d 373. In Duff, this Court concluded "that an individual's bare hands, fists, and feet are not considered dangerous weapons for the purposes of N.C. Gen. Stat. § 14-87." Id. at __, 615 S.E.2d at 381. The armed robbery charge in Duff, as in the instant case, was based on the defendant's use of his hands as a weapon in the commission of the robbery. The Duff Court held that the trial court erred in failing to dismiss the charge of armed robbery as the use of defendant's hands as weapons in the commission of the robbery did not support that charge. Id.
Accordingly, we reverse the trial court's denial of defendant's motion to dismiss the charge of robbery with a dangerous weapon and vacate defendant's conviction on that charge. The State did, however, prove all of the essential elements of common law robbery, which are "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear."State v. Smith, 305 N.C. 691, 700, 292 S.E.2d 264, 270, cert. denied, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). Accordingly, this case is remanded to the trial court with instructions to enter judgment on the offense of common law robbery.
Upon review of Officer Newton's personnel records, we have found no material evidence not identified by the trial court in its review of those records.
Affirmed in part, reversed in part, vacated in part and remanded in part.
Judges TYSON and JOHN concur.
Report per Rule 30 (e).